————o————

CITY OF ST. LOUIS, Appellant, *vs.* SUSAN E. SICKLES, Executrix of JAMES B. SICKLES, *et al.*, Respondent.

1. *Bonds, official—Sureties liability of—Implication.*—The engagement of a surety on an official bond is entered into with reference to the law which defines the duty of the officer, and cannot be extended by implication.

*Appeal from St. Louis Circuit Court.*

*E. P. McCarty,* for Appellant.

The recognition and implied authorization of the practice of delivering money to the auditor by the ordinances in force at the time of the execution of this bond, make the receipt of this money his official act and his direct violation of the express provision of ordinance as to its disposition, a breach of the bond.

This was the actual mode of conducting these accounts, established by the auditor and the departments, long before the time this bond was entered into.

*Krum and Patrick,* for Respondent.

It was not the auditor's duty to receive or disburse the public moneys, and the sureties could not have supposed that the auditor for whom they had become bound simply for the faithful discharge of his duties as auditor, would become the custodian of the public moneys or the disbursing officer of the city.

The obligations of the sureties to this bond, cannot be enlarged by implication.

*M. L. Gray*, for Respondent.

The obligation of a surety is not to be extended by implication beyond the terms of his contract. (Blair vs. Perpetual Ins. Co., 10 Mo., 566 ; Nolley *et al.*, vs. Callaway Co. Court, 11 Mo. 47.)

EWING, Judge, delivered the opinion of the court.

This is an action on the bond of Philip H. Murphy as auditor of the City of St. Louis, against the defendants as his sureties. The condition of the bond is as follows, namely : Now if the said Philip H. Murphy shall faithfully perform all the acts and duties required of him in said office by any law of the State of Missouri or ordinance of the City of St. Louis, now existing or hereafter passed, this obligation to be void; otherwise to remain in force. The bond bears date April 5th, 1867. The breach alleged is, that by an ordinance of the said City of St. Louis passed on the 6th day of September, 1864, the auditor is required at the end of each month to pay over to the treasurer of said city, all monies that may remain unpaid on any *pay roll* appertaining to his office, and that during the years 1868 and 1869 and whilst the said Murphy continued to be such auditor, he the said Murphy, in the discharge of his duties as such auditor, drew from time to time from the treasury of the plaintiff divers large sums of money on the payrolls appertaining to his office, to be paid out during the respective months in which they were so drawn to the persons respectively entitled thereto, and if not so paid the same were, at the end of the months in which they were drawn, to be paid over to the City Treasury according to the ordinance aforesaid ; and plaintiff says that of the sums so drawn by said Murphy from said treasury, he during said period drew the sum—in the aggregate—of $3,075 30-100, which he failed and refused to pay over to the persons thereto entitled, and which he also failed and refused to pay over to said treasurer at the end of the month in which it was received or at any other time, and which said sum the said Murphy failed and refused to pay at anytime to plaintiff or to its said treasurer, and the said

Murphy failed and refused, and still does so, to account for or pay over the sum aforesaid, but has appropriated the same to his own use contrary to the said ordinance and to his duties as such auditor.

The suit was dismissed as to Murphy after he filed his answer. The other defendants, Sickles and Cafferata filed separate answers, which however are the same in substance. These answers deny that there was any breach of the bond as alleged, and for further answer and defense to the action, state that under the laws and ordinances the said auditor was an accounting officer of said city and nothing more, it being his duty to audit and allow accounts and claims against said city and certify the same to the treasurer of said city, and that it was no part of his official duty under said laws and ordinances at the time he executed his said bond or at any time since, to receive or pay out money belonging to said city, and that they became the sureties of said Murphy with this understanding of his duties as such auditor. That if said auditor was permitted to draw money from the treasury as alleged, it was by reason of the misconduct of plaintiff, and they ought not to be held responsible therefor.

The evidence tended to prove that warrants had been issued and paid by the treasurer at the end of the various months; that it was the practice of the auditor's office during the time Murphy held it for the auditor to receive the money from the treasurer on warrants for the pay rolls, and pay the same to the various city officers, and that he failed to pay said moneys to the parties entitled to receive the same on said rolls for the years 1868 and 1869, but converted the same to his own use, and that he failed to pay any of said sums of money to the City Treasurer at the end of the respective months in which he received the same or at any time before or after.

These warrants were drawn by the auditor, countersigned by the comptroller and made payable "to pay roll or order." It further appeared in evidence that after said Murphy went out of office the practice was changed and warrants were drawn directly in favor of the parties named in the pay roll, and the money paid to them.

The plaintiff asked the following instruction: If the defendant, Murphy, as auditor, drew money on the pay-rolls offered in evidence from the City Treasury to be paid on those pay-rolls, and failed to pay a part of the moneys so drawn to the parties thereto entitled, and contrary to an ordinance duly passed and then in force, failed to pay over to the City Treasurer, the moneys that remained unpaid on the said pay-roll at the end of each month or afterwards; then the defendant Murphy, and his sureties on the bond in force when the moneys were so received and so omitted to be paid are liable for the same.

This instruction was refused, to which ruling of the court plaintiff excepted.

At the instance of the defendants, the court declared the law to be. That the sureties of the Auditor cannot be held for any deficit or default in regard to moneys of the city in the auditor's hands, unless it appears affirmatively that such moneys came to the auditor's possession in his official capacity and under some law of the State, or some ordinance of the city. These facts not appearing, there is no liability on the sureties shown.

There was a finding and judgment for defendants. A motion for a new trial being overruled, plaintiff brings the cause to this court by appeal.

The City Charter provides for an auditor and comptroller, who in addition to the duties prescribed by the act shall perform such other duties as may be prescribed by ordinance, Acts 1867, Art. 6, Sec. 10, p.——. By section 3 of the same article, it is made the duty of the City Auditor to prescribe the mode of keeping, stating and rendering all accounts, unless otherwise provided for by ordinance, between the city and any person or body corporate. The following section, 14, makes it the duty of the City Treasurer to receive and keep the money of the City and to pay out the same on warrants drawn by the Comptroller and audited by the City Auditor.

An ordinance of the City—5453, Rev. Ord. 1866, p. 559, made it the duty of the Treasurer to receive and keep all

moneys of the City which might come to his hands, and disburse the same upon the warrant of the Auditor legally drawn. It is not claimed by counsel for the City that there is any provision of the charter, or of any ordinance that expressly authorizes the auditor to receive or have the custody of the public moneys, but that such authority is implied or recognized from certain ordinances to which he refers, and which are substantially as follows, namely: That the auditor is required at the end of each month to pay over to the treasurer and take his receipt therefor all moneys that may remain unpaid on any pay-roll appertaining in any way to his office. That the Treasurer shall keep a pay-roll account which shall show proper dates, persons, objects and amounts, and he shall credit said account with all moneys paid over by the auditor as provided for in section sixteen, and shall on demand pay such persons as may appear entitled thereto the proper sums, and take their receipt for the same and charge the amount to said pay-roll account. (Rev. Ord. 1866, §§ 16, 17, p. 556.) It is provided by another ordinance, that in case the Mayor shall fail or refuse to nominate as therein before required, then the auditor is instructed not to pay the officer holding over after the Common Council shall have adjourned *sine die*, his salary. (Rev. Ord. 1866, § 8, p. 306.) The breach of the bond alleged is that in the discharge of his duties as such auditor, he drew from the Treasury from time to time, large sums of money on the pay-rolls appertaining to his office to be paid out to the persons respectively entitled thereto, and if not so paid, the same were at the end of each month to be paid over to the City Treasury, and that he failed to pay the same *into* the Treasury. The condition of the bond is that he shall faithfully perform all the acts and duties required of him as said officer by any law of the State or ordinance of the city, etc.

The contract of the sureties is only for the faithful performance of those trusts that properly and legally belong to his office. (Blair vs. Perpetual Ins. Co., 10 Mo., 560.) The sureties of a public officer whose duties are defined by law, are

only responsible for the faithful performance of the duties assigned to him by law and cannot be made liable for malversation in the conduct of affairs which do not pertain to his office, and if the officer engage or those who by law have the control of his official conduct employ him in matters foreign to his office, the sureties will not be bound for his acts while so employed; and any losses which may happen in the transaction or management of such business cannot be visited upon those who have guaranteed the official conduct of the officer. (Nolley vs. Callaway Co., 11 Mo., 447.) The obligation of a surety is not to be extended by implication beyond the terms of his contract; and the engagement is entered into with reference to the law which defines the duties of the officer; and it would be a palpable violation of his contract to hold him liable for the performance of other duties than those assigned to him by law. Was the money in question drawn from the Treasury by the auditor in official capacity, or in the discharge of his official duties? If not, there was no breach of his bond, and if after he received such moneys, he appropriated them to his own use, or otherwise failed to account for them, the sureties cannot be held reponsible for they were received without authority of law or ordinance. I am unable to find in any provision of the charter, or in any ordinance of the city, authority for committing the public moneys to the hands of the auditor. The duties of the Treasurer are clearly defined, he is the sole custodian of the public moneys. It is his duty in the language of the ordinance to receive and keep all moneys of the city which shall come to his hands and disburse the same upon the warrant of the auditor legally drawn. He had no more authority to pay the money due on the pay-roll to the auditor than to any other person who had no interest in it. No law or ordinance constituted the auditor the agent of the persons named in the pay-roll to receive and disburse the moneys. If he received the money due those persons it was by an unauthorized act of the Treasurer, and not in his official capacity, and it was therefore no breach of the obligation entered into by defendants as his sureties. The

pay-roll account was not payable to the auditor.  He could legally have no official connection with it except to issue warrants in favor of the persons entitled to the money.  If in accordance with an illegal and improper practice which it is claimed had existed, but of which it is not pretended the sureties had any knowledge, the auditor was made a disbursing officer of the moneys due on the pay-roll, it was clearly outside the scope of his official duties, and for a failure on his part to pay over moneys to the Treasurer received under such circumstances or otherwise to account for them, the surety cannot be held responsible.  The obvious answer to such a demand is *non hœc foedera veni.*

The judgment is affirmed.  The other Judges concur.